*91 OPINION OF THE COURT
Herman Cahn, J.
Defendant United States Fire Insurance Company (USF) moves for an order pursuant to CPLR 3212 granting summary judgment dismissing the complaint. Plaintiffs cross-move for an order pursuant to CPLR 3211 (b) striking the first, second, third and fourth affirmative defenses.
This is an action to recover the sum of $395,413 under an insurance policy for losses sustained by the following named insureds: Fulton Street Restaurant Limited Partnership, trading as Fluties Pier 17 Restaurant (Fluties); Pedro O’Hara’s, Inc. (Pedro); Fulton Street Cafe (Cafe) and CDM, Inc. (CDM). Fluties, Cafe and Pedro are referred to herein as the restaurant companies. The restaurants in question are located in the South Street Seaport area of Manhattan.
On August 13, 1990, a fire occurred at a Consolidated Edison substation which caused power outages in various portions of the Seaport, lasting from three to seven days. As a result, the insured restaurants sustained a business interruption loss.
On August 20, 1990, USF issued a $65,000 check to the restaurant companies and CDM and sent it to the insureds’ broker. On September 27, 1990, USF issued a second check for $50,000 in favor of the insureds. A representative of the restaurants signed and delivered proof of loss forms in connection with the issuance of both of these checks.
The policy of insurance, which had been issued in March 1990, had "common policy conditions” which provided: "F. Transfer of your rights and duties under this policy. Your rights and duties under this policy may not be transferred without our written consent except in the case of the death of an individual named insured.”
Section 3 of the policy provided: "Duties in the event of loss or damage * * * h. send us a signed, sworn statement of loss containing the information we request to investigate the claim. You must do this within sixty (60) days after our request. We will supply you with the necessary forms.”
USF submitted two additional proof of loss forms to plaintiffs, one was already filled out in the sum of $111,854 and one for $128,641; plaintiffs rejected both of these "offers” as being *92 inadequate and never executed or filed either of these proof of loss forms. On April 22, 1992, USF served demand letters for examinations under oath upon the restaurant companies and CDM. Each letter was accompanied by two blank proof of loss forms. The demand letters stated: "As per the express terms of your policy, we request that you file sworn proofs of loss with [USF] through these offices. Stapled herewith are two blank proof of loss forms.”
Although the restaurant companies and CDM received the demand to file a third set of proofs of loss, they did not do so within the 60-day period. The parties did attempt to schedule the examination under oath, but, except for CDM, the plaintiffs refused to appear for an examination after USF demanded the execution of a "nonwaiver” agreement. Under that proposed agreement, plaintiffs would have stipulated that no acts of the insurer were to be construed as a waiver of any of the insurer’s rights under the policy, including but not limited to the right to demand timely submission of proofs of loss. Plaintiff’s counsel argue that no provision of the policy required the insured to execute such a nonwaiver agreement. Subsequently, USF took the position that the insureds had not complied with the proof of loss provision of the policy and that neither the insureds nor their successors in interest were entitled to recover any further sums under the policy.
Plaintiffs then commenced the instant action. Plaintiff Kathleen Charlton sues individually and as the successor in interest to Fluties and CDM. Pedro and the Cafe, after the business interruption loss, went through chapter 11 bankruptcy proceedings; a plan of reorganization was approved by the Bankruptcy Court and both entities were discharged by the Bankruptcy Court. Hence, they are able to sue in their own right. The Boston Safe Company had held a security interest in assets of Fluties. Ms. Charlton received an assignment of that security interest in exchange for settlement of a debt owed to Boston Safe Co. CDM is now in chapter 7 bankruptcy proceeding; the trustee in bankruptcy appointed plaintiffs’ counsel to represent the trustee as well.
The first affirmative defense of USF asserts that the insureds are precluded from maintaining the action by reason of their failure to file the proof of loss forms within 60 days after the demand made upon them by USF. The second affirmative defense asserts that plaintiffs are precluded from maintaining this action by reason of their failure to appear for an examination as required under the policy. The third affirmative *93 defense asserts that plaintiff failed to commence the action within two years after the loss, as required under the terms of the policy. The fourth affirmative defense appears to be duplicative of prior defenses; it relates to the 60-day period and the two-year rule.
Insurance Law § 3407 provides: "(a) The failure of any person insured against loss or damage to property under any contract of insurance * * * to furnish proofs of loss to the insurer * * * shall not invalidate * * * any claim * * * unless such insurer * * * shall, after such loss or damage, give to such insured a written notice that it * * * desire[s] proofs of loss to be furnished by such insured * * * on a suitable blank form or forms. If the insured shall furnish proofs of loss within sixty days after the receipt of such notice and such form * * * such insured shall be deemed to have complied with the provisions of such contract of insurance relating to the time within which proofs of loss are required”.
The law is clear that where the insurer has demanded that the insured file a proof of loss, and the insurer has supplied the necessary blank proof of loss form, and the insured has failed to meet the 60-day deadline, the insurer can invoke the insured’s noncompliance as an absolute defense in an action on the insurance policy (Igbara Realty Corp. v New York Prop. Ins. Underwriting Assn., 63 NY2d 201; Lentini Bros. Moving & Stor. v New York Prop. Ins. Underwriting Assn., 76 AD2d 759). Evidence of communications or settlement negotiations between an insured and insurer before or after the expiration of the limitations period contained in a policy is not, without more, sufficient to establish waiver or estoppel (Gilbert Frank Corp. v Federal Ins. Co., 70 NY2d 966).
The instant case differs from the type of situation found in Igbara Realty Corp. (supra), since here the plaintiffs indeed filed proofs of loss in connection with the receipt of the preliminary payments from defendants. Neither the insurance policy nor the statute requires the filing of more than one proof of loss. The purpose of the proof of loss is to furnish the insurer with information relating to the claim, affirmed or sworn to by the insured. Here, the proofs of loss which were filed performed that function. The court notes that earlier proofs of loss were accepted by the insurer. Another proof of loss is not required by the statute or the policy.
At his examination before trial, William Lewis, a claim specialist for the defendant, admitted that plaintiffs supplied *94 him with all the documents that he requested with respect to the claim. In response, defendant states that while it may have been given relevant information (regarding the claim) which existed as of the fall of 1990, it was lacking information which occurred after the bankruptcies of the respective entities. Defendant also submits an affidavit from Anthony Ciccodicola, CPA, who indicates that plaintiffs did not supply all the financial records needed by defendant’s accountants to evaluate the claims. Even if such material was not supplied, it can be obtained as part of the normal discovery procedures. The failure to supply such material, as alleged, does not require the severe sanction of dismissal of the action. The court denies summary judgment to defendant and grants summary judgment to plaintiffs striking the first and fourth affirmative defenses.
The second affirmative defense must be stricken. Plaintiffs clearly offered to comply with defendant’s demand for an examination and refused only to execute the nonwaiver agreement demanded by defendant. Defendant has not cited any policy provision which would require plaintiffs to execute nonwaiver agreements. Under the circumstances, therefore, defendant cannot fault plaintiffs for their failure to appear.
As to the third defense, USE does not deny that an action was commenced against it within two years of the loss, but maintains that Fluties and CDM have never commenced an action. The problem can be obviated by showing documentation that the trustee in bankruptcy has authorized plaintiffs and their counsel to appear on their behalf. Upon presentation of such documentation, plaintiffs may renew their motion on this issue.
Accordingly, the motion is denied, and the cross motion is granted to the extent that the first, second and fourth affirmative defenses are stricken.